[No. C063710. Third Dist. Aug. 28, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ANGELO ATENCIO, JR., Defendant and Appellant.

**COUNSEL**

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—A jury found defendant Angelo Atencio, Jr., guilty of two felonies—grand theft of a firearm and firearm possession by a felon. The trial court found defendant had a prior serious felony conviction and a prior strike

and had served a prior prison sentence. The court sentenced defendant to an aggregate prison term of 12 years four months.

On appeal, defendant contends his sentence for the unlawful firearm possession conviction must be stayed pursuant to Penal Code[1] section 654 because his two offenses were incidental to only "one criminal intent and objective, namely to possess the [firearm]." In the alternative, he argues the trial court abused its discretion by imposing consecutive sentences after finding that his two offenses were predominantly independent of one another.

We conclude defendant is correct on his first point: his sentence for the unlawful firearm possession conviction must be stayed pursuant to section 654. Accordingly, we will modify defendant's sentence and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2009, Vanessa Trew went to the house of her mother, Debra Trew, to clean for money.[2] Defendant joined Vanessa at the house. After looking around, defendant brought a lockbox and small-caliber handgun to Vanessa, which she told him to put back.

Vanessa called Jason Duensing and asked him to pick her and defendant up from Debra's house. Around noon, Vanessa and defendant loaded three or four garbage bags, a box, a duffelbag, and a lamp into the back of Duensing's truck. Vanessa asked Duensing to take defendant to her apartment and to return for her in about an hour. After unloading all the items at Vanessa's apartment, except the duffelbag, which defendant kept in his possession, defendant asked Duensing to drive him to Thermalito. Duensing dropped defendant off at an intersection and returned to Debra's house to pick up Vanessa. Later that afternoon, Debra's husband, John Kuhn, found five guns missing from the unlocked gun safe, including a .45-caliber semiautomatic pistol.

The next day, defendant called Shannon McCraney "wanting to sell [her] some jewelry or something." Before noon, defendant stopped by McCraney's home carrying a plastic bag. McCraney saw jewelry and a handgun in the bag and asked defendant why he had a gun in her home. Defendant responded that the gun was not loaded. Approximately 10 minutes later, "cops surround[ed] [the] house," and McCraney left the home. Defendant hid behind

---

[1] Further undesignated section references are to the Penal Code.

[2] We refer to Vanessa Trew and Debra Trew by their first names to avoid confusion.

the couch and remained in the home for approximately four and one-half hours before being taken into custody.

On May 8, 2009, the Butte County Sheriff's Office searched McCraney's home and found a loaded semiautomatic .45-caliber AMT firearm among other items in the stove's broiler pan. Kuhn identified the gun as his, and the serial number confirmed his ownership.

Defendant was charged with grand theft of a firearm, receiving stolen property, and firearm possession by a felon. All charges pertained to the same firearm, Kuhn's .45-caliber gun.

The trial court instructed the jury that defendant could not be found guilty on both the grand theft and the receipt of stolen property charges. The court explained that the unlawful firearm possession charge was "independent of that instruction" because "[i]t's legally possible to steal something or receive it, and then be a felon in possession of it."

The jury found defendant guilty of grand theft (finding that defendant acted with the "intent to permanently deprive a person of property") and firearm possession by a felon. The trial court found defendant had served a prior prison term, had a prior serious felony conviction, and had a prior strike. After finding the "two crimes and their objectives were predominantly independent of each other," the court imposed consecutive sentences and sentenced defendant to the upper term of six years for the grand theft of a firearm and one-third of the middle term (16 months) for the unlawful firearm possession. In accordance with the three strikes law, the court further imposed a five-year enhancement for defendant's prior serious felony and a stayed one-year enhancement for his prior prison term. Defendant filed a timely notice of appeal.

## DISCUSSION

### I

### *Standard of Review*

Whether section 654 applies to the facts in a given case is one of fact for the trial court to decide, and such findings will be upheld on appeal if there is any substantial evidence to support them. (*People v. Akins* (1997) 56 Cal.App.4th 331, 339 [65 Cal.Rptr.2d 338], citing *People v. Liu* (1996) 46

Cal.App.4th 1119, 1135–1136 [54 Cal.Rptr.2d 578].) We review the trial court's findings " 'in a light most favorable to the respondent and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085 [58 Cal.Rptr.2d 259], quoting *People v. Holly* (1976) 62 Cal.App.3d 797, 803 [133 Cal.Rptr. 331].)

## II

### *Section 654*

Section 654, subdivision (a), provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." At its simplest, "section 654 proscribes double punishment for multiple violations of the Penal Code based on the 'same act or omission.' " (*People v. Siko* (1988) 45 Cal.3d 820, 822 [248 Cal.Rptr. 110, 755 P.2d 294].)

Recently, in *People v. Jones* (2012) 54 Cal.4th 350 [142 Cal.Rptr.3d 561, 278 P.3d 821], our Supreme Court confirmed that "[s]ection 654 prohibits multiple punishment for a single physical act that violates different provisions of law." (*Jones*, at p. 358.) *Jones* involved a convicted felon who was found with a loaded firearm that was not registered to him concealed in the door panel of the car he was driving. (*Id.* at p. 352.) The court held that the defendant could be punished only once for the three crimes of which he was convicted: possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public. (*Id.* at pp. 352, 360.)

Here, the evidence established that defendant took a pistol from Debra's house and kept it until the next day, when he abandoned it in Shannon McCraney's house after the police showed up and surrounded the house. If defendant's taking of the pistol and his possession of it through the following day are considered a single physical act, then pursuant to *Jones* defendant cannot be punished for the possession of the pistol in addition to being punished for the theft of it. But even if the taking and the subsequent possession do not constitute a single physical act,[3] defendant still can be

---

[3] The Supreme Court noted in *Jones* "that what is a single physical act might not always be easy to ascertain." (*People v. Jones, supra*, 54 Cal.4th at p. 358.)

punished only for the theft. This is so because when a defendant's crimes involve a course of conduct, "[w]hether [the] course of criminal conduct is divisible and therefore gives rise to more·than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

Here, defendant argues the evidence showed that he "harbored [only] one criminal intent and objective, namely to possess the firearm[]. [His] primary offense was grand theft of a firearm and his possession of the same gun was merely in conjunction with that theft." The People, on the other hand, contend there was substantial evidence to support a finding of separate criminal objectives because "[a]t the time of the theft, [defendant]'s objective was to take the [gun] from [its] original owner,"[4] but "[t]hat same objective did not exist over a day later when he was arrested." According to the People, the day after the theft occurred, defendant's "purpose was no longer to take the [gun] from [its] original owner, but to possess a gun while selling jewelry . . . ."

We are not persuaded by the People's argument. To say that defendant's objective on the first day was to *take* the gun, while his objective on the next day was to *possess* it is cutting the point too fine. The only point in *taking* the gun was to *gain possession* of it, so that he could then do with it what he pleased, whether "possess[ing] [it] while selling jewelry" or something else. The fact that defendant kept possession of the gun for a period of 24 hours did not, without more, alter his intent and objective such that his course of criminal conduct can be deemed to consist of more than one act for purposes of section 654. Just as in *Neal*, where the defendant's act of arson was merely the means by which he tried to kill his intended victims (*Neal v. State of California, supra,* 55 Cal.2d at p. 20), here defendant's theft of the pistol was merely the means by which he gained possession of the pistol. Under these facts, without more, there was no substantial evidence to support the trial court's double punishment of defendant for taking the pistol and subsequently possessing it.

The People note that "[s]ection 654 . . . bars multiple punishments when fortuitous circumstances put a weapon in the hands of the defendant only at the instance of committing the primary offense." Thus, in *People v. Bradford* (1976) 17 Cal.3d 8 [130 Cal.Rptr. 129, 549 P.2d 1225], where the defendant

---

[4] In their argument, the People contend defendant's objective was "to take *the four guns* from their original owner." (Italics added.) But defendant was charged with taking and possessing only a single firearm, so the question here for purposes of section 654 is was his intent and objective with respect to *that* firearm only?

wrested a revolver away from a police officer and shot him, the defendant could not be punished for both assault with a deadly weapon upon a peace officer and the possession of a concealable firearm by a felon because the defendant's possession of the revolver "was not 'antecedent and separate' from his use of the revolver in assaulting the officer." (*Id.* at pp. 13, 22.)

That application of section 654 has no bearing here, however. This is not a case where the defendant acquired a gun, then committed a crime using it. Instead, here defendant was charged with a crime for the manner in which he acquired the gun, then charged with another crime for possessing the gun after he acquired it. The rule from *Bradford* does not speak to this situation.

The People also rely on *People v. Garcia* (2008) 167 Cal.App.4th 1550 [85 Cal.Rptr.3d 155], "where the defendant robbed and car jacked multiple people with a hand gun over the course of five days." In *Garcia*, the defendant used the handgun in two robberies in Arcadia at 12:30 p.m. and was arrested approximately 20 minutes later in El Monte with the handgun in his possession. (*Id.* at p. 1566.) The defendant "admitted he intended to use the firearm in a firefight with the officers but abandoned that plan because too many of them were present." (*Ibid.*) On these facts, the appellate court concluded that "implicit in the trial court's concurrent sentencing order [wa]s the implied finding that [the] defendant's intent in possessing the firearm during the Arcadia robberies was different from that when he was stopped in El Monte and he contemplated the shootout with the arresting officers." (*Ibid.*)

Like *Bradford*, *Garcia* does not speak to the facts of the present case. The defendant in *Garcia* was convicted of using a handgun in two robberies and also of possessing the handgun when he was arrested after the robberies. The defendant's postrobbery possession of the gun was not the means by which he committed the robberies, nor were the robberies the means by which he possessed the handgun. In other words, his use of the gun in the robberies and his continued possession of the gun after the robberies, including at the time he contemplated a shootout with the police, were distinguishable for purposes of section 654.

Here, in contrast, defendant was convicted of taking a handgun and then of possessing it after he took it. As we have explained already, defendant's taking of the pistol was merely the means by which he gained possession of it. Thus, what we have here is a course of conduct pursuant to one criminal objective—to possess the gun—and based on that there is but one act that can be punished under section 654.

## DISPOSITION

Defendant's sentence is modified to stay the term of imprisonment on his conviction of possession of a firearm by a felon. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and to forward the amended abstract to the Department of Corrections and Rehabilitation.

Nicholson, Acting P. J., and Butz, J., concurred.