Filed 11/18/13  P. v. Hubert CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C072357 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF121622) |
| v. | |
| KEVIN LLOYD HUBERT, JR., | |
| Defendant and Appellant. | |

After taking a vehicle that did not belong to him, defendant Kevin Lloyd Hubert, Jr., drove recklessly and crashed into the front yard of a home, causing property damage. Defendant subsequently resisted a peace officer and was ultimately arrested.

A jury found defendant guilty of one felony and three misdemeanors relating to his unauthorized taking of the vehicle and the events that followed. The court further found defendant's prior strike and prior prison term allegations to be true. After denying defendant's *Romero*[1] motion, the trial court sentenced him to nine years in prison.

---

[1]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

1

On appeal, defendant argues that the trial court unconstitutionally engaged in judicial fact finding by weighing aggravating circumstances with those that were mitigating in determining to sentence defendant to the upper term. He further contends that he was deprived of his constitutional right to the effective assistance of counsel because trial counsel failed to object to the trial court's dual use of his prior convictions to both enhance and justify his upper-term sentence. Finally, defendant contends that his sentences for reckless driving and hit and run with property damage should be stayed pursuant to Penal Code[2] section 654 because those two offenses were purely incidental to the "single objective" of "evading the [police] officer." Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

A

*The First Trial*

On the morning of April 3, 2012, Jonathan Flores found that his white Oldsmobile was not in its usual parking spot at his apartment complex in Woodland. He had locked the car the previous evening, but the driver's side window was rolled up only half way. Flores had not given anyone permission to take the vehicle. He spoke to the police and reported the missing vehicle.

On April 7, 2012, Woodland Police Officer Brian Olson was on patrol with his police dog, Mondo, when he saw defendant driving the stolen Oldsmobile. Officer Olson looked at defendant directly in his face as defendant drove past him in the opposite direction. At the time, defendant was driving at about 25 miles per hour, which was the lawful speed limit. Once Officer Olson turned around to follow defendant, however, defendant made a quick right turn and began to accelerate rapidly. Defendant ran a red light and a truck had to make a very sudden stop to avoid a collision. When defendant

---

[2]     Undesignated section references are to the Penal Code.

2

reached a speed of about 100 miles per hour, the officer decided to discontinue the pursuit because of his concern for public safety. Officer Olson slowed down, but continued in the same direction that he had seen defendant going.

While driving down the same road, Officer Olson saw a crowd of people surrounding the front yard of a residence. It turned out that the Oldsmobile he had been pursuing had crashed into the front yard of a house, damaging a city water main and pole. People came out of their houses because of the noise they heard from the screeching tires and the loud crash. People then observed defendant running down the street.

Matthew Holland, one of the observers, tackled defendant and restrained him until Officer Olson reached the scene. At this point, Holland let defendant go. As Officer Olson got closer, he recognized defendant as the person he had seen driving the stolen vehicle. Defendant got up and ran toward a fence. Seeing this, Officer Olson commanded Mondo to chase after and bite defendant. Officer Olson ordered defendant to stop, but defendant jumped over the fence into the backyard of a residence, almost getting bit by Mondo in the foot as he did so.

Officer Olson got to the fence and saw defendant running across the backyard. He again commanded defendant to stop, warning that if he did not stop, he would be bitten. Officer Olson gave Mondo the bite command again and Mondo bit defendant on the arm and shoulder, bringing defendant to the ground. The officer then got control of defendant and brought him into custody.

Officer Cristobal Lara arrived and led defendant to an ambulance so that he could get treated for his bite wounds. While escorting him, Officer Lara searched defendant's pockets and found a plastic bag that contained methamphetamine. At the hospital emergency room, Officer Olson questioned defendant about the vehicle. Defendant said that he had bought the vehicle "for a couple hundred dollars" from a person named "Slick" and had received a pink slip recording the transaction. However, defendant was unable to produce this pink slip.

On July 2, 2012, defendant was charged with two felony offenses: transportation of a controlled substance and unauthorized taking or use of a vehicle. Defendant was also charged with three misdemeanor offenses: reckless driving, hit and run with property damage, and resisting or obstructing a peace officer. The information also alleged that defendant had a prior strike conviction and three prior prison terms.

On July 12, 2012, a jury found defendant guilty of all the misdemeanors. The jury further found defendant not guilty of transportation of a controlled substance. The jury failed to reach a verdict on unlawful taking or use of a vehicle and the trial court declared a mistrial as to that count.

B

*The Second Trial*

A retrial of the unlawful taking or use charge occurred on September 4, 2012. The next day, on September 5, the jury found defendant guilty of unlawful taking of a vehicle. The court further found the prior strike and prison term allegations to be true. Defendant had five prior felony convictions, including three for possession of a controlled substance, one for transportation of a controlled substance, and one for first degree burglary. However, defendant served the prison terms for the possession convictions together. Thus, he had only three prior prison terms.

On September 24, 2012, defendant filed a motion to dismiss his prior strike conviction pursuant to section 1385 and *Romero*.

C

*The Sentencing*

On October 22, 2012, the trial court denied defendant's motion to dismiss his prior strike. The court then sentenced defendant to a term of nine years in state prison, consisting of a three-year upper term for unlawful taking, doubled because of the strike prior, and an additional three years due to his prior prison terms. Defendant was also sentenced to 90 days for each misdemeanor count, to run concurrent to the state prison

4

sentence. In imposing the upper term sentence for unlawful taking, the court explained: "Well once again, the Court is bound by law and will follow that law. The Court will add to the factors in mitigation that Mr. Hubert has a serious drug addiction problem which has negatively influenced his life and almost certainly affected his conduct in this case, so I will consider that as a factor in mitigation.

"However, the factors in aggravation far outweigh the factors in mitigation, including his past criminal convictions, the fact that he was on post release community supervision at the time this offense was committed, and the prior performance on probation and parole, so when I weigh all those factors, clearly the aggravating factors do outweigh the mitigating factors, and so the upper term is appropriate."

On October 23, 2012, defendant filed a timely notice of appeal.

DISCUSSION

I

*The Trial Court Properly Used Its Discretion In*

*Imposing The Upper Term On The Unlawful Taking*

Defendant contends the trial court failed to use the "broader discretion" that is mandated by California's current sentencing law in imposing the upper term for unlawful taking. Defendant argues the trial court enjoys increased discretion to impose the lower term than under previous law. Rather than adhering to this new legal standard, he contends, the trial court used an unconstitutional standard in sentencing him to the upper term. This is because the court balanced the aggravating factors against the mitigating factors before imposing his upper term sentence -- something defendant argues the court *cannot* do in the wake of *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856] (*Cunningham*). We conclude that the trial court did not abuse its discretion in imposing the upper term, because it had the authority, in its discretion, to weigh aggravating and mitigating circumstances pursuant to California's current sentencing law.

5

In 2007, the United States Supreme Court declared California's determinate sentencing law (DSL) unconstitutional. (*Cunningham, supra*, 549 U.S. at p. 288 [166 L.Ed.2d at p. 873].) Under this scheme, the trial judge, and not the jury, had the authority to find whether sentencing facts had been proven. (*Ibid.*) *Cunningham* found the prior version of the DSL unconstitutional because it required the trial court to impose the middle term unless the court found aggravating facts that justified imposing the upper term. (*Ibid.*) The Supreme Court found that this sentencing scheme violated a defendant's right to trial by jury protected by the Sixth and the Fourteenth Amendments because it placed sentence-elevating factfinding in the judge's province rather than the jury's. (*Id.* at p. 292 [166 L.Ed.2d at pp. 875-876].)

The California Legislature responded by revising the DSL (*People v. Sandoval* (2007) 41 Cal.4th 825, 836, fn. 2) so that the trial court was no longer required to impose the middle term absent the finding of aggravating facts (*id*. at pp. 846-847; § 1170, subd. (c)). Instead, the trial court now has the discretion to impose either the lower, middle, or upper term, and the trial court need only state its reasons for its choice. (§ 1170, subd. (b).) The court's sentencing decision is subject to review for abuse of discretion and this discretion must be used in a manner that is not arbitrary and capricious, and should be based upon an " 'individualized consideration of the offense, the offender, and the public interest.' " (*Sandoval,* at p. 847; § 1170, subd. (b).)

Defendant argues that the trial court employed an unconstitutional sentencing standard by weighing the aggravating and mitigating factors, as was required pre-*Sandoval*. This argument misapprehends the holding in *Cunningham*. *Cunningham* did not hold that it is unconstitutional for trial courts to weigh aggravating and mitigating factors in deciding what term to impose, as defendant contends. (*Cunningham, supra*, 549 U.S. at pp. 288-289 [166 L.Ed.2d at p. 873].) *Cunningham* simply held that the prior version of the DSL, which *required* the trial court to impose the middle term unless the court found aggravating facts that justified the upper term, impermissibly delegated the

6

factfinding function to the trial court. (*Id.* at p. 292 [166 L.Ed.2d at pp. 875-876].) This flaw was cured by the Legislature when it revised the DSL and gave the trial court the discretion to impose any of the three possible terms. (§ 1170, subd. (b).) Under the new version of the DSL, a trial court can exercise its discretion to impose the upper term based on a determination that aggravating factors outweigh mitigating factors. (§ 1170, subd. (b).) Such a determination is *not* constitutionally infirm.

II

*Trial Counsel's Decision Not To Object To Dual Use Of Prior Convictions To Enhance Defendant's Sentence Did Not Constitute Ineffective Assistance Of Counsel*

Defendant argues that he was denied the constitutional guarantee of effective counsel because his trial counsel erroneously failed to object to the trial court's improper dual use of his prior felony conviction and prison priors.

Rule 4.420(c) of the California Rules of Court provides in part as follows: "[A] fact charged and found as an enhancement may be used as a reason for imposing the upper term only if the court has discretion to strike the punishment for the enhancement and does so."

Defendant contends that the trial court made improper dual use of his previous convictions when it imposed the upper-term sentence. During sentencing, the court cited defendant's "past felony . . . convictions" as one of a "range of factors" for imposing the upper term. In conjunction with using defendant's prior convictions as an aggravating factor, the court also used *one* of those prior convictions to double the term from three to six years. Defendant argues that dual use of his prior conviction to enhance his sentence and justify the upper term was improper and trial counsel should have objected on that basis.

Under *Strickland v. Washington* (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 692-693] in order to prevail on an ineffectiveness of counsel claim, a defendant must show, first, that the counsel's performance was "deficient." (*Id.* at p. 687 [80 L.Ed.2d at

7

p. 693].)  Such deficiency is established by proving that the representation fell below an objective standard of reasonableness.  (*Id.* at p. 687 [80 L.Ed.2d at p. 693].)

Defendant argues that there was no tactical or strategic justification for counsel's error, and thus it should follow that trial counsel's conduct fell below any objective standard of reasonableness.  While the trial court would appear to have made an improper dual use of a prior strike conviction, to the extent that it relied on defendant's "prior convictions" as one of the aggravating circumstances justifying imposition of the upper term while using the strike prior to enhance defendant's sentence, defense counsel reasonably could have chosen not to object because the strike prior was one of only *several* prior convictions, and the prior convictions themselves were only one of *several* aggravating factors the trial court relied on.  Hence, defense counsel could have reasonably decided that asking the trial court to omit the strike prior from its determination of which term to impose would not have made a material difference in the court's decision.  Defendant's claim of ineffective assistance of counsel is thus without merit.

III

*The Imposition Of Concurrent Sentences For Reckless Driving,*

*Hit and Run With Property Damage, And Resisting A*

*Peace Officer Did Not Violate Penal Code Section 654*

Defendant argues that the trial court wrongly imposed concurrent sentences for the single act of evading a police officer thus violating section 654.  He maintains that his criminal acts of reckless driving, hit and run with property damage, and resisting a peace officer constituted a single, continuous course of criminal conduct because his sole objective was to evade a police officer.  Thus, he claims he could lawfully be punished for only one of the aforementioned offenses.  We conclude that the trial court did not abuse its discretion in failing to stay the sentences because there is substantial evidence to

8

support the inference that the three offenses in question were separate and divisible acts of conduct.

Whether section 654 applies to the facts in a given case is one of fact for the trial court to decide, and such finding will be upheld on appeal if there is any substantial evidence to support it. (*People v. Akins* (1997) 56 Cal.App.4th 331, 339, citing *People v. Liu* (1996) 46 Cal.App.4th 1119, 1135-1136.) We review the trial court's findings " 'in a light most favorable to the [defendant] and presume in support of the [sentencing] order the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085, quoting *People v. Holly* (1976) 62 Cal.App.3d 797, 803.)

Section 654, subdivision (a) provides, in relevant part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." At its simplest, section 654 prohibits the imposition of multiple punishments for a single act. (*People v. Atencio* (2012) 208 Cal.App.4th 1239, 1243.) The purpose of section 654 is to ensure that a defendant is not punished more than once for what is essentially a single criminal act, and in order to " 'insure that the defendant's punishment will be commensurate with his criminal liability.' " (*People v. Valli* (2010) 187 Cal.App.4th 786, 794.)

Here, the evidence established that defendant drove recklessly in the stolen car, and in the course of doing so, crashed into someone's front yard, causing damage, after which he tried to run away from the car and into another backyard. Where criminal acts involve a course of conduct, as in this instance, "[w]hether [the] course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal v. State of California* (1960) 55 Cal.2d 11, 19.)

9

Here, defendant argues that he should have been sentenced only for resisting and evading the police officer, because his sole objective was to do so.  We are not persuaded by defendant's argument.  There is ample evidence from which the trial court could logically deduce that defendant's violations were discrete acts.  While defendant may have driven recklessly to evade Officer Olson, the pursuit had already ended when defendant crashed into the front yard of someone's house.  Officer Olson had lost sight of the car and had slowed down his speed for safety reasons.  Defendant then crashed into someone's yard, an act that the trial court could have reasonably determined was *not* done with the objective to evade the officer, but rather, a result of reckless driving.  Furthermore, once defendant crashed, he tried to run away from the damage he had caused.  While he may have been running away to evade the police officer, he was also fleeing the scene of an accident that had caused property damage.  Thus, based on these facts on record, the trial court could have reasonably deduced that defendant had committed three separate violations for which he had more than one objective and sentenced him accordingly.  The trial court did not abuse its discretion, and this court will not disturb its determination.

## DISPOSITION

The judgment is affirmed.

                                        ROBIE            , Acting P. J.


We concur:



      BUTZ            , J.



      DUARTE        , J.

10