Filed 3/10/14  P. v. Frausto CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARMANDO FRAUSTO,<br><br>    Defendant and Appellant. | H039426<br>(Santa Clara County<br>Super. Ct. No. C1113689) |

## I.     INTRODUCTION

Defendant Armando Frausto appeals after pleading no contest to being an accessory to murder (count 1; Pen. Code, § 32),[1] being a felon in possession of a firearm (counts 2 & 4; former § 12021, subd. (a)(1)), and being a felon in possession of ammunition (counts 3 & 5; former § 12316, subd. (b)(1)).  He admitted he had been convicted of a prior strike offense (§§ 667, subds. (b)-(i), 1170.12) and that he had served five prior prison terms (§ 667.5, subd. (b)).  Defendant was sentenced to a 15-year prison term, which included consecutive terms for counts 1 through 4.

On appeal, defendant contends the trial court should have stayed the terms for counts 2 and 3 pursuant to section 654.  We will affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II.     BACKGROUND

### A.     Facts Underlying Counts 1, 2, and 3[2]

On January 23, 2010, Albert Cobarrubias was the victim of a homicide. Police identified Michael Frausto,[3] defendant's cousin, as a suspect in the shooting. Defendant was interviewed in connection with the investigation.

Defendant said he saw Michael the day after the homicide. Michael, who had been stabbed the year before, asserted "that he had got the guys that stabbed him." Michael told defendant details about how he had committed the shooting. Michael also told defendant that he had unloaded the gun he had used.

At some point, defendant suggested Michael should "get rid of [the gun] or to give it to him." Michael initially stated he was going to keep the gun, and he buried it in a friend's backyard. Later, Michael dug up the gun and gave it to defendant. Michael wanted defendant to "destroy" the gun, and defendant's initial plan was "to get rid of the gun." However, defendant instead sold the gun, along with bullets, for $200 and "a quarter ounce of dope."

Defendant told police "that the gun and bullets were in a sock." The person who purchased the gun and bullets from defendant confirmed receiving them in a sock.[4]

### B.     Facts Underlying Counts 4 and 5

At around midnight on April 18, 2010, San Jose Police Officer Anthony Vizzusi initiated a vehicle stop. The vehicle had two occupants. After the vehicle pulled over,

---

[2] The facts are based on the transcript of defendant's preliminary hearing.

[3] Since defendant and Michael Frausto have the same surname, we will refer to Michael by his first name to avoid confusion.

[4] Defendant asserts that when he received the gun from Michael, it was inside the sock along with the ammunition. Although the record is not entirely clear on this point, the Attorney General states that defendant's statement of the facts is "accurate and substantially complete," and specifically agrees that "Michael gave [defendant] a sock containing the gun and ammunition."

2

the passenger—defendant—exited. Defendant looked at the officer, then ran across a freeway on-ramp and up an embankment. Another officer saw defendant climb over a guard rail and run across the freeway, and a third officer located a gun on the side of the freeway in the location where defendant had been. The gun contained a loaded magazine.

Officer Vizzusi had observed defendant drop a cell phone as he fled; the cell phone contained photographs of defendant, including one of him holding a handgun, which was consistent with the gun found on the side of the freeway. The driver of the vehicle provided Officer Vizzusi with defendant's moniker, "Mondo," which enabled defendant to be identified.

### C.      Charges, Pleas and Admissions, and Sentence

Defendant was charged with three offenses stemming from his possession of the gun used in the Cobarrubias shooting: being an accessory to murder (count 1; § 32), being a felon in possession of a firearm (count 2; former § 12021, subd. (a)(1)), and being a felon in possession of ammunition (count 3; former § 12316, subd. (b)(1)). Those three counts were alleged to have been committed between January 24, 2010 and March 4, 2010.

Defendant was also charged with two counts stemming from the April 18, 2010 incident: being a felon in possession of a firearm (count 4; former § 12021, subd. (a)(1)), and being a felon in possession of ammunition (count 5; former § 12316, subd. (b)(1)).

The information further alleged that defendant had been convicted of a prior strike offense (§§ 667, subds. (b)-(i), 1170.12) and that he had served five prior prison terms (§ 667.5, subd. (b)).

On October 9, 2012, defendant pleaded no contest to all five counts and admitted the strike and prior prison term allegations. His plea was unconditional.

At the sentencing hearing on February 22, 2013, the trial court imposed a 15-year prison term. The prison term consisted of a six-year term for count 1 (being an accessory

3

to murder), consecutive 16-month terms for counts 2 through 4 (the two counts of possession of a firearm by a felon and one count of possession of ammunition by a felon), and consecutive one-year terms for the prior prison allegations. The trial court stayed the term for count 5 (the second count of possession of ammunition by a felon) pursuant to section 654.

## III.  DISCUSSION

Defendant contends the trial court should have stayed the terms for counts 2 and 3 pursuant to section 654. He argues that his conviction on count 1 (being an accessory to murder) was based on the same act as his convictions for counts 2 and 3 (being a felon in possession of a firearm and being a felon in possession of ammunition between January 24, 2010 and March 4, 2010), and that he had only one intent or objective in committing all three offenses.

### A.    *Proceedings Below*

The probation report recommended a 13-year sentence, including a consecutive term for count 2, "considering the possession of a firearm is a separate crime [from count 1] likely occurring within a time period of approximately two months and occur[ing] under a separate set of operable facts . . . ." The probation report recommended a concurrent term for count 3 "considering the ammunition was in the firearm and the offense occurred at the same time as Count Two."

At the sentencing hearing, the prosecutor asserted that the probation report was "not correct" insofar as it stated that "the ammunition in count three was in the gun that's alleged in count two." The prosecutor noted that the bullets "were in a sock, not a gun." The prosecutor also asserted that the ammunition had subsequently been discovered by the sheriff's office: "And there was quite a bit of ammunition of all sorts of different caliber, approximately 177 rounds, that far exceeded the capacity of the gun . . . ."

4

The prosecutor argued that "with respect to counts one, two, and three, they are separate criminal objectives in each of those, and also the timing of those crimes is a bit different. [¶] Count one, of course, relates to assisting in concealing the murder in this case. That was by agreeing to take the firearm that was used. The understanding that [defendant] had given his cousin, Michael, was that he was going to destroy it or get rid of it. That's not what happened, according to his own statement to the police. And, instead, and this is why counts two and three are charged, he took the gun and ammunition and sold it . . . . [¶] So, the objective in [counts] two and three was to possess the guns and sell them for money and drugs. That's a different criminal objective than what's in count one. And, also, of course, by selling ammunition, he was able to get more than just selling the gun alone. [¶] And the evidence in this case is that there were multiple kinds of ammunition involved."

The probation officer agreed with the prosecutor's corrections to the probation report. Defendant did not address the section 654 issue, but he urged the trial court to "follow the probation recommendation for the 13-year term."

In imposing sentence for count 2, the trial court explained that "consecutive sentencing is being imposed because it was a separate crime that occurred under a separate set of operative facts, as well as with a separate criminal objective." The trial court explained that it was imposing a consecutive term for count 3 "for the same reasons . . . the fact that it was a separate crime, that occurred under a separate set of operative facts, and with a separate criminal objective."

### B. Legal Principles

Subdivision (a) of section 654 provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." The purpose

5

of the statute is to ensure that the punishment is commensurate with the defendant's culpability.  (*People v. Perez* (1979) 23 Cal.3d 545, 550-551 (*Perez*).)

"The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654.  The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.  [Citations.]"  (*People v. Bauer* (1969) 1 Cal.3d 368, 376.)  "On the other hand, if the evidence discloses that a defendant entertained multiple criminal objectives which were independent of and not merely incidental to each other, he [or she] may be punished for the independent violations committed in pursuit of each objective even though the violations were parts of an otherwise indivisible course of conduct."  (*Perez, supra,* 23 Cal.3d at p. 551, fn. omitted.)

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination."  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)  On appeal we defer to express or implicit determinations that are based upon substantial evidence.  (Cf. *People v. Osband* (1996) 13 Cal.4th 622, 730-731.)

### C.     Analysis

Defendant contends that counts 1 through 3 were all based on "the single act of taking the sock containing the gun and ammunition" and that he "cannot be punished three times for committing a single act."  According to defendant, that act was also part of "an indivisible course of conduct" for which he had only one objective:  "to aid his cousin in escaping arrest."

The Attorney General contends that section 654 does not bar multiple punishment. According to the Attorney General, defendant committed accessory to murder "the moment he received the gun and ammunition and agreed to destroy or otherwise dispose

6

of them," and that defendant's intent in doing so was "to hinder the police investigation of the murder." The Attorney General argues that defendant could be separately punished for his continuing possession of the gun and ammunition because "he might have used the weaponry to commit unrelated crimes of his own." Further, defendant could be separately punished for the two possession offenses because the ammunition was possessed outside of the firearm and because the ammunition consisted of 177 rounds of varying caliber.[5]

We first address the question whether defendant could be separately punished for being an accessory and for one or more of the possession crimes. Several recent cases have considered whether section 654 applied when the defendant was convicted of being a felon in possession of a firearm and one or more other crimes that stemmed from possession of the same firearm.

In *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*), the California Supreme Court considered whether the defendant could be "punished separately for the crimes of possession of a firearm by a felon, carrying a readily accessible concealed and unregistered firearm, and carrying an unregistered loaded firearm in public." (*Id.* at p. 352.) The defendant had been found with a loaded .38-caliber revolver in his car; the gun was not registered to him. (*Ibid.*) The defendant had purchased the gun three days earlier " 'for protection,' " and he had kept the gun at his grandmother's house before that day. (*Ibid.*) The court held that under the circumstances, the defendant had committed "a single act" that could only be punished once. (*Id.* at p. 360.)

---

[5] Although the prosecutor provided the description of the ammunition at the sentencing hearing, the trial court was entitled to consider it for sentencing purposes, particularly since defendant did not object at that time. (See *People v. Arbuckle* (1978) 22 Cal.3d 749, 754 [sentencing judge may consider " 'responsible unsworn or "out-of-court" information relative to the circumstances of the crime' "].) In his reply brief, defendant acknowledges that the ammunition consisted of "various rounds."

The *Jones* court noted that the defendant's "guilt on all three charges was premised solely on his having the gun in his car when arrested" and that "the jury convicted defendant of each crime due to his being caught with the gun in the car on [the day of his arrest], not due to any antecedent possession." (*Jones, supra,* 54 Cal.4th at p. 359.) The court declined to express an opinion "on what the outcome might be under other facts" and did not decide whether "keeping the gun at the house and carrying it in the car were separate acts." (*Ibid.*)

The lead opinion in *Jones* emphasized that it was finding "a single act" and that it did not need to decide whether the defendant also had only "a single objective." (*Jones, supra,* 54 Cal.4th at p. 359.) The lead opinion noted that in other cases, the evidence might show a single act was committed with multiple objectives, but the court did not decide whether multiple punishment would be allowed in such a case. (*Id.* at p. 360.)

After *Jones*, the Third District Court of Appeal decided *People v. Atencio* (2012) 208 Cal.App.4th 1239 (*Atencio*), which considered whether section 654 applied to the defendant's convictions of grand theft of a firearm and possession of a firearm by a felon. (*Id.* at p. 1241.) The defendant had taken a .45-caliber semiautomatic pistol from a residence, and he had discarded the pistol in another residence the following day after trying to sell some jewelry to the resident. (*Id.* at pp. 1241-1242.) The *Atencio* court held that section 654 prohibited multiple punishment for the two offenses, because the "defendant's theft of the pistol was merely the means by which he gained possession of the pistol." (*Id.* at p. 1244.)

The *Atencio* court rejected the People's argument that the defendant had two separate objectives: first, to take the gun from its original owner; and second, to possess the gun while selling jewelry. (*Atencio, supra,* 208 Cal.App.4th at p. 1244.) The court determined that this argument was "cutting the point too fine" since the evidence showed that the defendant's "only point in *taking* the gun was to *gain possession* of it, so that he could then do with it what he pleased, whether 'possess[ing] [it] while selling jewelry' or

8

something else." (*Ibid.*) "The fact that defendant kept possession of the gun for a period of 24 hours did not, without more, alter his intent and objective such that his course of criminal conduct can be deemed to consist of more than one act for purposes of section 654." (*Ibid.*)

The instant case is distinguishable from both *Jones* and *Atencio.* Here, in contrast to *Jones,* defendant was not convicted of counts 1 through 3 based solely on his possession of the firearm and bullets at a discrete point in time. His convictions were based on a number of acts that occurred over an indeterminate period of time. Those acts included receiving the gun and ammunition from his cousin, maintaining possession of the gun and ammunition, and selling the gun and ammunition. Unlike in *Jones,* defendant's convictions were not based on his commission of "a single act." (*Jones, supra,* 54 Cal.4th at p. 360.)

This case is somewhat closer to the *Atencio* case, where the defendant's convictions were based on his possession of the gun over a two-day period. However, the *Atencio* defendant did no more than maintain possession of the gun after he kept it, and therefore the evidence did not support a finding that the defendant had any objective other than possession of the gun. In the instant case, defendant initially took possession of the gun and ammunition with the objective of helping his cousin avoid being caught, but defendant later developed a second objective: to sell the gun and ammunition for money and drugs. Since defendant did "more" than merely keep possession of the gun after he received it, the evidence supported a finding that his initial intent and objective were "alter[ed] . . . such that his course of criminal conduct can be deemed to consist of more than one act for purposes of section 654." (*Atencio, supra,* 208 Cal.App.4th at p. 1244.)

We next address the question of whether defendant could be separately punished for possessing the gun and for possessing the ammunition. In *People v. Lopez* (2004) 119 Cal.App.4th 132, the court held that section 654 precluded multiple punishment for

9

possession of a firearm by a felon and possession of ammunition by a felon.  In that case, however, the only ammunition that the defendant possessed was inside the loaded firearm.  The court determined that "[t]o allow multiple punishment for possessing ammunition in a firearm would, in our judgment, parse the objectives too finely."  (*Id.* at p. 138.)  "Where, as here, all of the ammunition is loaded into the firearm, and 'indivisible course of conduct' is present and section 654 precludes multiple punishment."  (*Ibid.*)  However, the court noted, "there may be instances when multiple punishment is lawful for possession of a firearm and ammunition."  (*Ibid.*)

In the present case, defendant did not merely possess ammunition inside of the firearm; he possessed ammunition outside of the firearm.  Moreover, the ammunition was of such a large quantity that it exceeded the capacity of the firearm.  Further, the ammunition was of varying caliber, such that some of it could not even have been used in that firearm.  Section 654 does not preclude multiple punishment for a defendant's " 'simultaneous possession of different items of contraband' " when " 'the possession of one item is not essential to the possession of another separate item.' "  (*Jones, supra,* 54 Cal.4th at p. 358.)

In sum, we conclude substantial evidence supports the trial court's findings and that section 654 does not bar separate punishment for counts 1 through 3.

## IV.    DISPOSITION

The judgment is affirmed.

_____

BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____

MIHARA, J.




_____

GROVER, J.

11