Filed 8/15/24  P. v. McAllister CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082010 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS309864) |
| MARTELL DAVID MCALLISTER, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Enrique Camarena, Judge.  Affirmed in part, reversed in part and remanded for resentencing.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

This is an appeal from a judgment of conviction after a jury trial. Martell David McAllister raises three issues. He contends (1) his convictions must be overturned because the evidence identifying him as a perpetrator of the charged crimes was insubstantial, (2) his conviction for felon in possession of a firearm violates the Second Amendment, and (3) the sentences for his felon-in-possession convictions should have been stayed pursuant to Penal Code section 654.[1] The People concede McAllister's sentence violated section 654. We agree and will reverse and remand for resentencing. We affirm the judgment in all other respects.

PROCEDURAL BACKGROUND

In December 2022, a San Diego County jury convicted McAllister of first degree robbery (§§ 211, 212.5, subd. (a)), first degree burglary with a person present (§§ 459, 460, subd (a), 667.5, subd. (c)(21)), and two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1)). McAllister admitted a prior serious felony conviction that was alleged to be a prior strike (§ 667, subds. (a)(1), (b)–(i)). He admitted two sentencing aggravating factors (§ 1170.12; Cal. Rules of Court, rule 4.421(b)(3)–(4)).

In February 2023, the trial court sentenced McAllister to a total prison term of 10 years and eight months, consisting of the middle term of four years on the robbery count, doubled to eight years for the prior strike, and consecutive terms of eight months for each of the felon-in-possession counts, doubled to 16 months. The court stayed the sentence on the burglary count pursuant to section 654, but the court did not stay the felon-in-possession counts.

---

1       Undesignated statutory references are to the Penal Code.

STATEMENT OF FACTS

Lisa L. and her husband, Pat L., kept a Remington .22 caliber rifle and a Howa .308 caliber rifle under their bed at their home in National City. Pat stored the guns in two black rifle case bags. One of the guns was given to Pat by a former tenant, Michael, in lieu of rent when Michael was short of cash. Michael was one of very few people who knew the guns were under the bed. Michael also knew Lisa and Pat typically left the back door unlocked.

In late July 2019, McAllister began exchanging text messages with someone named "Mike." This was about three to six months after Michael had moved out of a spare bedroom in Lisa and Pat's house. Mike sent the address of Lisa and Pat's home to McAllister, along with details about when Lisa would usually be out of the house.

Also in late July, McAllister started an independent text exchange with Otis Beverly. McAllister told Beverly he was "trying to find something for him" and "need[ed] a car." On July 30, 2019, McAllister and Beverly agreed Beverly would give McAllister a ride the next morning.

That next day, on July 31, 2019, Lisa returned home after running some errands. She started to work on her computer in the living room, but she stopped when she heard a "riffling" noise in the master bedroom. Lisa called out to see if the noise was being made by a tenant in their garage apartment. No one responded, but the noise in the bedroom stopped. Lisa went back to work.

The noise started again. Lisa walked to the bedroom to investigate. There she saw "a gentleman" on his hands and knees "ruffling through some stuff underneath [her] bed." Lisa asked the man, "What are you doing here? You don't belong here. This is not your home." The man called Lisa a "bitch." Lisa told him to "get the 'F' out of my house. This is my house." The man

3

stood up and grabbed Lisa's arms hard enough to cause bruises. He pushed her backward toward the bathroom. When they reached the bathroom, the man pushed Lisa down. She hit her head on the shower doors and fell to the floor.

Lisa got up and went to the living room to call 911. As Lisa made the call, she saw the man get back on his hands and knees and start "ruffling under the bed" again. The man ran out of the house.

Through the living room window, Lisa saw the man run down the driveway with the two black rifle gun bags that had been under her bed. Across the street, Lisa saw another man sitting on the hood of a dark sedan that looked like a "Chevy Malibu." The man who had been on the hood of the car jumped into the driver's seat. The man who had been in Lisa's house got into the passenger's side of the car with the two rifle bags. The two men drove away.

Lisa told the 911 operator that a "black man" came into her home, "took two rifles," and "left in a dark colored Chevy Malibu." She said the driver was "also black" and "wearing camouflage shorts, blue and gray." She described the man who came into her home as between 6 feet and 6 feet, 2 inches, tall with a "thin build" and "thin beard," wearing a "gray hoodie" with "a black hat underneath the hood."

*Minutes later*, nearby patrol officers identified a vehicle that appeared to match Lisa's description on the 805 freeway not far from her home. The officers radioed for assistance and conducted a traffic stop of a dark blue "Chevy Cruze."

McAllister was in the passenger seat of the car. A "gray hooded sweatshirt" and "a black baseball-style hat" were near him on the floor and console. Beverly was in the driver's seat wearing "a white tank top with blue

4

and gray camouflage shorts." In the car, officers found black rifle bags containing a Remington .22 caliber rifle and a Howa .308 caliber rifle. The officers also found Beverly's cell phone and the cell phone used by McAllister to communicate with Beverly and Mike.

Lisa could not identify McAllister as the person who burglarized her home and robbed her. But she identified the two gun bags found with McAllister as the ones kept under her bed. Pat identified both guns and both gun bags. The bag containing the Howa rifle was a brand-new black bag he purchased after Michael gave it to him. The bag containing the Remington rifle was black on the outside with red felt and a "woodsmen decoration" on the inside.

DISCUSSION

I.

*Substantial Evidence Established McAllister Was the Person Who Robbed Lisa and Burglarized Her Home*

McAllister makes a two-paragraph argument contending we must overturn his convictions because the evidence identifying him as the man who stole Pat's rifles was purportedly insufficient. A conviction unsupported by sufficient evidence violates the due process guarantees of the state and federal constitutions. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [federal constitution]; *People v. Rowland* (1992) 4 Cal.4th 238, 269 [state constitution].)

We review the record for substantial evidence. When "the evidentiary support for a conviction faces a challenge on appeal, the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."

5

(*People v. Johnson* (1980) 26 Cal.3d 557, 562.) "We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence." (*People v. Jennings* (2010) 50 Cal.4th 616, 638–639 (*Jennings*).) We reverse for insufficient evidence only where it clearly appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) McAllister fails to meet this standard.

As recounted above, police apprehended McAllister and Beverly in a dark-colored Chevrolet sedan with Pat's guns *minutes* after the robber/burglar of those guns left Pat and Lisa's home in a dark-colored Chevrolet sedan. The clothing that was located near McAllister and the clothing worn by Beverly perfectly matched the clothing of the perpetrators described by Lisa during the 911 call. A trail of text messages in McAllister's phone showed McAllister had obtained information about Lisa's schedule and her address a few days before the crime. This evidence easily constitutes substantial evidence on the element of identity. Indeed, the evidence was overwhelming.

McAllister contends the evidence was insubstantial for two reasons. First, Lisa failed to identify him at trial and during a pre-trial photo line-up. Second, the perpetrator must have been someone known to Lisa's dog, because the dog did not bark at him.

As a threshold matter, we observe McAllister failed to follow the cardinal rule that "[a]n appellant challenging the sufficiency of the evidence to support the judgment must cite the evidence in the record supporting the judgment and explain why such evidence is insufficient as a matter of law." (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1408.) One obvious explanation for Lisa's inability to identify McAllister is she was not asked to

6

identify him right after the incident.  The photo line-up took place three months later.  The trial took place three and a half years later after the COVID-19 pandemic.  And Lisa's dog may not have barked at the intruder because it was 14 years old, partially deaf, and had cancer.  McAllister discusses none of these facts.  We address his argument, nevertheless.

As noted, on review for substantial evidence, "[w]e presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence." (*Jennings, supra*, 50 Cal.4th at pp. 638–639.)  We do not reweigh the evidence.  (*Id.* at p. 638.)  The jury heard the evidence about Lisa's inability to identify McAllister as well as the evidence about her dog.  We presume, in accordance with the standard of review, the jury was not persuaded this evidence outweighed other substantial evidence of McAllister's guilt.  McAllister's convictions were supported by sufficient evidence.

## II.

*McAllister's Second Amendment Challenge to His Convictions Is Meritless*

McAllister contends his two convictions pursuant to section 29800, subdivision (a)(1) (section 29800(a)(1))—for firearm possession by a felon—violate the Second Amendment.  The Second Amendment provides:  "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (U.S. Const., 2d Amend.)  Section 29800(a)(1) prohibits felons from possessing firearms as follows:  "Any person who has been convicted of a felony under the laws of the United States, the State of California, or any other state, government, or country . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony."

McAllister presents a facial challenge to the constitutionality of section 29800(a)(1). A facial challenge to a legislative act is "the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists* under which the [a]ct would be valid." (*United States v. Salerno* (1987) 481 U.S. 739, 745, italics added (*Salerno*).) The fact that an act "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." (*Ibid.*) This is because Supreme Court jurisprudence does not recognize "an 'overbreadth' doctrine outside the limited context of the First Amendment." (*Ibid.*)

As we understand McAllister's argument, he contends Second Amendment rights extend to all citizens including those, such as felons, who have not been " 'law-abiding' " at all times in their past. This is an uncertain proposition. Whether certain groups of people, including felons, fall entirely outside the Second Amendment's scope is currently subject to great debate. (See, e.g., *Kanter v. Barr* (2019) 919 F.3d 437, 451–452 (dis. opn. of Barrett, J.) ["There are competing ways of approaching the constitutionality of gun dispossession laws."]; *People v. Alexander* (2023) 91 Cal.App.5th 469, 478 ["Felons . . . are not included among the class of people afforded rights under the Second Amendment."]; *Range v. Attorney General United States* (3d Cir. 2023) 69 F.4th 96, 98, cert. granted, judg. vacated *sub nom. Garland v. Range* (U.S., July 2, 2024, No. 23-374) 2024 WL 3259661 ["We agree . . . that, despite his false statement conviction, [appellant] remains among 'the people' protected by the Second Amendment."].)

Assuming felons enjoy Second Amendment rights, McAllister contends section 29800(a)(1) is constitutionally infirm on its face because it purportedly excludes all felons from ever possessing guns in California despite the inevitability that some may eventually reform. In McAllister's

8

view, "[e]x-felons," meaning those felons who have served their sentences and have become " 'law[-]abiding' persons," must be treated for purposes of the Second Amendment as having had "their civil rights restored, thereby returning them to the political community." (Italics omitted.) He argues a complete ban on the possession of guns by felons who have served their sentences is accordingly unconstitutional. There is one problem with his argument.

Section 29800(a)(1) does not prevent felons who have served their sentences from seeking restoration of their civil rights. The restoration of civil rights—including the right to possess a firearm—is governed by Part 3, Title 6, of the Penal Code. (§ 4800 et seq.)

After a waiting period, most felons may petition the superior court for a certificate of rehabilitation and pardon from the Governor. (§ 4852.01.) A pardon based on a certificate of rehabilitation entitles "the person to exercise thereafter all civil and political rights of citizenship, including, but not limited to . . . the right to own, possess, and keep any type of firearm that may lawfully be owned and possessed by other citizens; except that this right shall not be restored . . . if the person was ever convicted of a felony involving the use of a dangerous weapon." (§§ 4852.17, 4854.) Offenders may also seek a pardon and restoration of gun rights directly from the Governor. (§§ 4800, 4854.)

So there is a path in California's regulatory scheme for at least some felons to restore their firearm rights. Given this path, section 29800(a)(1) does not in fact permanently ban all felons from possessing a gun. This is fatal to McAllister's facial challenge.

The United States Supreme Court recently held "[a]n individual found by a court to pose a credible threat to the physical safety of another may be

9

temporarily disarmed consistent with the Second Amendment." (*United States v. Rahimi* (2024) 144 S.Ct. 1889, 1903.) The Supreme Court has further opined, albeit in dicta, that prohibitions on the possession of firearms by felons are "presumptively lawful." (*District of Columbia v. Heller* (2008) 554 U.S. 570, 627, fn. 26.)

Based on this authority, it is clear section 29800(a)(1) is not fatally flawed *in all its applications*. (*Salerno, supra,* 481 U.S. at p. 745 ["[T]he challenger must establish that no set of circumstances exists under which the [a]ct would be valid."].) As explained, the disarmament of felons by section 29800(a)(1) is potentially temporary for at least some felons. And in our view, for at least some crimes, a credible threat to public safety may be inferred from the nature of the conviction itself. We take no position as to whether section 29800(a)(1) may be susceptible to as-applied challenges based on individual circumstances. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) But McAllister has failed to show "no set of circumstances exists" under which section 29800(a)(1)'s prohibition of felons possessing a firearm is valid. (*Salerno,* at p. 745.) His facial challenge to section 29800(a)(1) fails.

### III.

*McAllister's Sentences for Felon-in-Possession of a Firearm Must Be Stayed*

Section 654 prohibits multiple punishment for a single act or an indivisible course of conduct. (§ 654; *People v. Hester* (2000) 22 Cal.4th 290, 294.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' " (*People v. Correa* (2012) 54 Cal.4th 331, 336.)

10

McAllister contends the sentences for his two felon-in-possession convictions must be stayed because the burglary, robbery, and firearm possession were all undertaken pursuant to a "single criminal objective—to steal personal property and abscond with it."  The Attorney General agrees that McAllister's sentence violates section 654 in this respect and the matter must be remanded for resentencing.  We agree as well.

There is no question McAllister committed the burglary and robbery pursuant to a single criminal objective—that is, as a means to obtain possession of the rifles.  (See *People v. Atencio* (2012) 208 Cal.App.4th 1239, 1245 ["defendant's taking of the pistol was merely the means by which he gained possession of it"].)  The record contains no evidence he stole anything else, nor evidence he possessed the rifles for any particular purpose.  The trial court erred when it failed to stay the sentences for the two felon-in-possession convictions.

## DISPOSITION

The sentence is vacated and the matter is remanded for resentencing. The judgment is affirmed in all other respects.

DO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.