Filed 2/11/21  P. v. Ast CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C090366 |
| Plaintiff and Respondent, | (Super. Ct. No. S18CRF0141) |
| v. | |
| MORGAN RAYMOND AST, | |
| Defendant and Appellant. | |

A jury found defendant Morgan Raymond Ast guilty of spousal abuse with corporal injury, making criminal threats, and violating a domestic violence restraining order.  The jury also found true the enhancement allegation that defendant caused his wife great bodily injury.  The trial court found several prior conviction allegations true, including four prior prison term enhancements.

1

On appeal, defendant argues: (1) the trial court erred in instructing the jury with CALCRIM No. 3163, as its definition of great bodily injury is ambiguous; (2) his convictions for making criminal threats and violating a domestic violence restraining order should have been stayed under Penal Code section 654;[1] and (3) his four one-year prior prison term enhancements must be stricken. We agree the sentence for violating a domestic violence restraining order must be stayed, and that the sentences on the prior prison term enhancements must be stricken. We modify the judgment accordingly. As modified, we affirm.

FACTUAL BACKGROUND

In July 2018, defendant and his wife lived together. On July 7, 2018, at 10:30 p.m., Officer Tracy Trapani with the South Lake Tahoe Police Department responded to a domestic violence call at their apartment. Wife answered the door. At least four areas on her face were swollen, with significant bruising under her right eye socket, and lumps on the right side of her temple and forehead. She smelled strongly of alcohol, her speech was slurred, making it difficult to understand her, she was stumbling around, and had bloodshot, watery eyes. Wife was able to say defendant had assaulted her but could not give any specific information. Her inability to provide details was related in part to her level of intoxication. Officer Trapani took pictures of wife's injuries. Wife declined medical attention.

At approximately 6:30 a.m. the next morning, South Lake Tahoe police officers Derek Simon and Matt Morrison responded to another domestic violence call at the apartment. Wife answered the door and told the officers they needed to take defendant away. The officers separated defendant and wife to take their statements. The officers noted wife and defendant each had injuries.

---

[1] Undesignated statutory references are to the Penal Code.

2

Wife had "significant severe facial injuries." The right side of her face was swollen and she had dark black bruises. She did not appear under the influence of alcohol when Officer Morrison was speaking with her. She did not remember Officer Trapani having been there the night before. Wife told Officer Morrison that defendant had kicked her in the head. She also reported that she had been choked to near unconsciousness and that while she was being attacked, defendant had threatened that "if he was going to be going to prison, that he would have a reason to, and he also said that he was going to kill her." Wife did not provide additional details as to when defendant made these threats. Officer Morrison determined wife needed medical attention and had her taken to the hospital by ambulance. Her right eye was bruised and swollen, she had an injury to her temple, bruising by her left ear, and additional bruising around the top of her forehead near the hairline. She had bruises on the underside of her forearms that were consistent with defensive injuries. She had bruising and irritated skin on her neck consistent with being choked. Officer Morrison took additional photographs of her injuries at the hospital.

Defendant had a scratch on his face, and bruising around his mouth and right eye. He initially denied knowing how he sustained the injuries. After he was placed under arrest, he claimed wife had caused the injuries during a physical altercation. Officer Simon photographed defendant's injuries.

As part of his investigation, Officer Morrison reviewed a restraining order that was in effect on July 8, 2019, forbidding defendant from having nonpeaceful contact with wife.

At trial, wife testified that when she came home on July 7, defendant appeared intoxicated and they got into an argument. Eventually, the fight escalated from yelling to defendant punching wife in the face. She left and went to a billiard hall. When wife returned to the apartment with a male friend, she and husband began arguing again. The argument intensified, and defendant held wife down and punched her in the face

3

repeatedly. She did not remember if he choked her. She initially testified she did not remember him threatening her. She later testified that while holding her down and punching her, defendant said, "If I'm going to prison, I'm going to have a good reason to go." When he was beating her, she thought she was going to die. When he was done, defendant apologized.

Defendant left, and when he returned in the morning, the argument reignited. It alternated between periods of defendant crying and hugging wife, telling her he loved her, and fits of anger and physical assault. He punched her and kicked her in her ear. She left and went to a friend's apartment to call the police.

Wife was taken to the hospital in an ambulance. She was told she had fractures throughout her face, including her occipital bone, and required a complete nasal sinus repair. She testified she had a sinus leak that was creating a chronic infection and her front tooth has a chip.

Wife remembered officers taking pictures of her injuries, and then going to the hospital in the ambulance. She recalled the officers taking pictures in her kitchen, and in the hospital, but did not recall if that was during one visit or separate contacts. Wife repeatedly testified she was unclear about specifics of the events, only remembered "bits and pieces . . . of what happened," could not put the time and the events together, and struggled with memory loss. She acknowledged that at the preliminary hearing she had testified all her injuries were caused during the fight on the bed, but had difficulty separating events into discrete categories because her memory was "in pieces" and she "remembered different things" but did not "remember exactly when they happened."

Wife testified that in jailhouse phone conversations after his arrest, defendant tried to coerce her into lying and placing the blame for her injuries onto someone else. She said she felt very threatened by "strange phone calls" she had been getting. She did not recognize the voices of those making the calls. She testified defendant was violating the restraining order by even calling her.

4

PROCEDURAL HISTORY

An information charged defendant with corporal injury on a spouse resulting in a traumatic condition, with a prior conviction for the same type of offense within the last seven years (§ 273.5, subds. (a), (f)(1); count 1), criminal threats (§ 422; count 2), and disobeying a domestic violence restraining order, a misdemeanor (§ 273.6, subd. (a); count 3). As to the spousal abuse charge, the information alleged defendant had inflicted great bodily injury (§ 12022.7, subd. (e)). The information further alleged defendant had a prior strike conviction (§ 667, subds. (b)-(i)), which also qualified as a prior serious felony (§ 667, subd. (a)(1)), and had served four prior prison terms (§ 667.5, subd. (b)).

A jury found defendant guilty on all counts. In bifurcated proceedings, defendant admitted his prior domestic violence conviction. After a court trial, the trial court found the prior conviction allegations true.

The trial court sentenced defendant to an aggregate term of 24 years four months in state prison as follows: the upper term of five years on the spousal abuse count, doubled pursuant to the strike, plus five years for the great bodily injury enhancement, a consecutive eight months (one-third the midterm) on the criminal threats count, doubled pursuant to the strike; a concurrent one year on the violating a domestic violence restraining order count; an additional consecutive five years for the prior serious felony conviction; and an additional three years for three of the four prior prison term enhancements.[2]

---

[2] The trial court stayed one of the four prior prison term enhancements under *People v. Jones* (1993) 5 Cal.4th 1142, 1149-1153 (trial court may not impose a cumulative enhancement under both sections 667 and 667.5 based on a single prior felony offense).

DISCUSSION

I

*CALCRIM NO. 3163*

Defendant contends the trial court erred prejudicially by improperly instructing the jury on the great bodily injury enhancement. Specifically, he contends CALCRIM No. 3163, describing the great bodily injury enhancement, is ambiguous and lessened the prosecution's burden of proof. Defendant also argues that if the issue is forfeited by failure to object, he received ineffective assistance of counsel.

A. *Additional factual background*

CALCRIM No. 3163, as given in this case, provides in pertinent part: "Great bodily injury means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm." During the jury instruction hearing, defense counsel indicated giving this instruction was "fine."

During closing argument, the prosecutor indicated she did not "imagine" the issue of great bodily injury would be in dispute, as defense counsel had indicated as much in her opening statement.[3] The prosecutor argued wife had suffered several fractures to her face; the jury saw photographs of the injuries and heard wife's testimony, and "[t]here's no dispute in this case that [there] was great bodily injury."

In response, in her closing argument, defense counsel said the prosecutor "got it partially right, I said [wife] had bruises. I didn't say she had great bodily injury. [Wife] did have bruises, but part of this case is you deciding how she got those bruises and when she got those bruises and what were the circumstances. [¶] . . . And when we turn to the great bodily injury enhancement, that has to be injuries that are more than moderate. And in this case they have to be injuries that were inflicted during domestic violence. But the

---

[3] Transcripts of the opening statements of the parties are not included in the record on appeal.

problem that we have in this case is she has bruising, but what defines more than moderate?  Are my shins moderate?[4]  Are they more than moderate?  You have bruising on her face, you don't have anything else.  You have her words, but you don't have any other evidence that confirmed her words."

Both parties' arguments focused primarily on wife's credibility and defendant's claims that wife's injuries were caused either by a drunken fall or a third party, and that he acted in self-defense against wife's aggression.

B.      *Legal standard*

"A claim of instructional error is reviewed de novo.  [Citation.]  An appellate court reviews the wording of a jury instruction de novo and assesses whether the instruction accurately states the law.  [Citation.]  In reviewing a claim of instructional error, the court must consider whether there is a reasonable likelihood that the trial court's instructions caused the jury to misapply the law in violation of the Constitution.  [Citations.]  The challenged instruction is viewed 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner.'  [Citation.]"  (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.)

" 'Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate.  [Citations.]'  [Citations.]  In other words, it is significant or substantial physical injury that is more than minor or moderate."  (*People v. Sandoval* (2020) 50 Cal.App.5th 357, 361 (*Sandoval*).)  " 'A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description.' "  (*People v. Escobar* (1992) 3 Cal.4th 740, 752.)  The injuries do not have

---

**4**     Earlier in argument, counsel had pointed out injuries on her own legs and that no one knew how she got them; her point being that the jury's belief about how she sustained her injuries would be based only on her words.

to be " 'permanent' " or " 'prolonged,' " nor must they include " 'protracted' "
"disfigurement, impairment, or loss of bodily function." (*Id.* at p. 750.) Rather,
transitory injuries, contusions, swelling, abrasions, lacerations, black eyes and bruising
can each constitute great bodily injury. (*Id.* at pp. 749, 752.)

C. *Forfeiture*[5]

Generally, a defendant who believes that an instruction is erroneous or requires
clarification must request correction or clarification of the instruction to avoid forfeiting
the issue on appeal. (*People v. Carrington* (2009) 47 Cal.4th 145, 189.) However, even
without a request or objection, a defendant may argue the court erred in instructing the
jury "if the substantial rights of the defendant were affected thereby." (§ 1259; *People v.
Johnson* (2015) 60 Cal.4th 966, 993.) Defendant contends the instruction as given
allowed the jury to make a true finding under circumstances that did not meet the
elements of the statute. If he were correct (as we explain, he is not), the error would have

---

[5]     The People assert that defendant "waived" his challenge because counsel "agreed
that the instruction was 'fine' [record citation] and did not request amplification or
clarification of its definition of GBI." But the loss of the right to challenge a ruling on
appeal for failure to object in the trial court is properly deemed a "forfeiture." "[A]
waiver is the ' "intentional relinquishment or abandonment of a known right." ' " (*In re
S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) Thus, the People's claim as to the failure to
object sounds in forfeiture, not waiver.

        To the extent the People argue defendant is foreclosed from raising this argument
because he agreed to the instruction being given, that is a claim of invited error. The
doctrine of invited error applies "to estop a party from asserting an error when 'his own
conduct induces the commission of error.' " (*People v. Perez* (1979) 23 Cal.3d 545, 549-
550, fn. 3, italics omitted.) In the jury instruction context, the invited error doctrine has
limited application because of the trial court's separate sua sponte duty to correctly and
completely instruct the jury. (*People v. Graham* (1969) 71 Cal.2d 303, 318-319.) "The
invited error doctrine will not preclude appellate review if the record fails to show
counsel had a tactical reason for requesting or acquiescing in the instruction. [Citation.]"
(*People v. Moon* (2005) 37 Cal.4th 1, 28.) There is no indication of such a purpose here,
therefore, invited error does not apply.

affected his substantial rights.  Accordingly, the claim is not forfeited.  (*Johnson, supra*, at p. 993.)  In any event, to resolve defendant's claim that defense counsel rendered ineffective assistance by failing to object or request modification of the instruction, we must address the merits of the issue.

D.    *Claim of instructional error*

Defendant argues that the disjunctive phrasing used in CALCRIM No. 3163 that great bodily injury is an injury " 'greater than minor *or* moderate harm,' " allowed the jury to convict where the harm is only more than minor but not greater than moderate.  Relying on *People v. Medellin* (2020) 45 Cal.App.5th 519 (*Medellin*), defendant asserts that CALCRIM No. 3163, and the prosecutor's argument that the great bodily injury enhancement was not contested, permitted the jury to find the enhancement true under an invalid legal theory as to what constitutes great bodily injury, i.e., greater than minor harm (invalid) or greater than both minor and moderate harm (valid).

In *Medellin, supra*, 45 Cal.App.5th 519, the trial court instructed the jury with CALCRIM Nos. 875 and 3160 which, like CALCRIM No. 3163, defined great bodily injury as " 'significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm.' " (*Medellin*, at p. 531.)  In addition, the prosecutor misstated the law by arguing that he was required to prove only that " '[a]n injury is greater than minor.' " (*Id*. at pp. 531, 533.)

A panel of the Fifth District Court of Appeal concluded there was a reasonable likelihood that the jury understood or applied the prosecutor's argument in an improper or erroneous manner:  "The arguments left the jury with two separate definitions for great bodily injury—greater than minor harm, or, greater than both minor *and* moderate harms.  After these competing arguments, the court's actual instructions informed the jury great bodily injury means 'greater than minor or moderate harm.' " (*Medellin, supra*, 45 Cal.App.5th at p. 533.)  The majority concluded the prosecutor's misstatement of the law,

9

standing alone, was insufficient to reverse defendant's convictions, but when combined with the ambiguity in the instruction, it required reversal. (*Id*. at pp. 533, 535-536.)

The *Medellin* court explained that " '[u]nder the plain language of the instruction, the jury could have convicted' [defendant] if they believed either greater than minor harm *or* greater than moderate harm was sufficient. [Citation.] 'The instruction's "use of the word 'or' . . . indicates an intention to use it disjunctively so as to designate alternative or separate categories." ' [Citation.]" (*Medellin, supra*, 45 Cal.App.5th at p. 534.) The dissenting justice agreed that the prosecutor had misstated the law but found that the instruction at issue correctly stated the law without ambiguity. (*Id*. at p. 538 (conc. & dis. opn. of Detjen, J.).)

Since *Medellin*, two different panels of the Fifth District Court of Appeal have revisited this issue, in *Sandoval, supra*, 50 Cal.App.5th 357, and *People v. Quinonez* (2020) 46 Cal.App.5th 457 (*Quinonez*), concluding that the instructional language is not ambiguous or reasonably likely to result in the jury misapplying the law.

In *Quinonez*, the court[6] concluded the instructions were not ambiguous when considered as a whole. "These instructions did not allow the jury to find defendant guilty and the enhancements true upon the determination that [the victim's injury] only constituted 'moderate' harm. Instead, the instructions expressly stated the jury had to find [the] injuries were 'significant or substantial,' consistent with the well-recognized definition of great bodily injury." (*Quinonez, supra*, 46 Cal.App.5th at p. 466.) In addition, the court noted that counsel did not misstate the law and the defense did not argue the victim had not suffered great bodily injury, but rather that defendant's actions

---

**6** The majority opinion in *Quinonez*, by Justices Poochigian and Detjen, did not cite *Medellin*. Justice Peña's concurring opinion expressed some concern about potential ambiguity of the instruction, but distinguished *Medellin* and concluded any potential ambiguity in the instruction was theoretical in the case. (*Quinonez, supra*, 46 Cal.App.5th at pp. 467-468 (conc. opn. of Peña, J.).)

were accidental, and she acted in self-defense. (*Ibid.*) Accordingly, the court held "[t]he instructions given in this case correctly stated the legal definition of great bodily injury, the prosecutor's closing argument was consistent with those definitions, defendant's substantial rights were not violated, and counsel was not prejudicially ineffective for failing to object to the instructions." (*Id.* at p. 467.)

In *Sandoval*, the majority[7] explicitly disagreed with the reasoning of *Medellin* and concluded that the definition of great bodily injury in the instruction was not ambiguous. " '[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .' [Citations.] Thus, it is improper to assess the correctness of the instructional definitions of great bodily injury by focusing exclusively on the use of 'or' in the phrase 'minor or moderate harm.' Rather, that phrase cannot be divorced from the one that immediately precedes it: 'injury that is *greater than*' (italics added). '[I]njury that is greater than minor or moderate harm' cannot reasonably be read to mean injury that is more than minor but less than moderate. Such an interpretation simply does not make sense, legally or grammatically, particularly when the phrase is preceded by the explanation that great bodily injury means physical injury that is 'significant or substantial.' " (*Sandoval, supra*, 50 Cal.App.5th at p. 361.)

We agree with the majority opinions in *Quinonez* and *Sandoval*. When considered as a whole and in context, the definition of great bodily injury in CALCRIM No. 3163 is

---

[7] Justice Snauffer, the author of *Medellin*, dissented in *Sandoval* after finding the instruction ambiguous, but concluded the error was harmless given the evidence of the injuries and the arguments of counsel, which correctly stated the law. (*Sandoval, supra*, 50 Cal.App.5th at pp. 363-364 (conc. & dis. opn. of Snauffer, J.).)

not ambiguous.[8]  The instruction "clearly informed jurors that great bodily injury meant significant or substantial physical injury, i.e., injury that was greater than moderate harm."  (*Sandoval, supra*, 50 Cal.App.5th at p. 362.)  Considering the instructions as a whole and the trial record, including the extent of wife's injuries and the arguments of counsel, there is no reasonable likelihood the jurors misapplied the instruction to find great bodily injury based on injury that was more than minor, but less than moderate.  We therefore find no error.

## II

### *Section 654*

Defendant contends that under section 654, the sentences on his convictions for making criminal threats and violating a domestic violence restraining order must be stayed because the convictions were based on the same conduct as his conviction for corporal injury to a spouse.  He claims the criminal threats and violation of the restraining order were "part and parcel of the assault and all three crimes thus involved a single act."  We agree in part.

A.    *Legal standard*

Section 654, subdivision (a) provides in pertinent part:  "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  Section 654 applies not only where there was one act in the ordinary sense, but also where there was a course of conduct that violated more than one statute, but nevertheless constituted an indivisible transaction.  (*People v. Perez, supra*, 23 Cal.3d at p. 551.)  However, if the

---

[8]    The definition of great bodily injury in CALCRIM Nos. 875 and 3160, the instructions given in *Sandoval* and *Quinonez*, is the same as the language in CALCRIM No. 3163, hence the courts' reasoning in those cases applies here with equal force.

evidence discloses that a defendant entertained multiple criminal objectives, he may be punished for the independent violations committed in pursuit of each objective. (*Ibid*.) " 'It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible.' [Citations.]" (*People v. Hicks* (1993) 6 Cal.4th 784, 789.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*Ibid*.; see also *People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.) " ' "A defendant's criminal objective is 'determined from all of the circumstances . . . .' " ' [Citation.]" (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.) And a trial court's findings, express or implied, are subject to the substantial evidence standard of review. (*People v. Atencio* (2012) 208 Cal.App.4th 1239, 1242; *People v. Liu* (1996) 46 Cal.App.4th 1119, 1135-1136.)

" 'The defendant's intent and objective are factual questions for the trial court . . . .' " (*People v. Coleman* (1989) 48 Cal.3d 112, 162.) Trial courts have broad latitude to determine whether a defendant harbored one or more objectives, and we uphold their findings on appeal if there is any substantial evidence in the record to support them. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) " 'We review the court's determination of [a defendant's] "separate intents" for sufficient evidence in a light most favorable to the judgment, and presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence. [Citation.]' [Citation.]" (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

13

B.     *Criminal threats*

Threats made during the infliction of physical harm can be punished separately from crimes associated with the physical harm without violating section 654 when the threats are made with a separate criminal objective.  (*People v. Mejia* (2017) 9 Cal.App.5th 1036, 1046-1047.)  "[M]entally or emotionally terrorizing the victim by means of threats is an objective separate from the intent to cause extreme physical pain.  Accordingly, a reasonable trier of fact could conclude that the criminal threats were in furtherance of a separate criminal objective . . . ."  (*Id*. at p. 1047.)

Contrary to defendant's claim, the assault and criminal threats were not a single act.  Rather, defendant engaged in a course of conduct from the evening of July 7 through the morning of July 8, during which he committed the separate acts of assaulting and threatening wife.  During the intermittent, yet continuing assault, defendant punched, choked, and kicked wife and, while holding her down, told her that if he was going to prison, he was going to have a good reason to and threatened to kill her.  From the evidence, it is reasonable to infer that defendant threatened wife to inflict emotional or psychological harm, separate from his purpose to harm her physically by beating her.  Thus, the trial court's implied finding of separate objectives was supported by similar reasonable inferences.

Moreover, the objectives were separate and independent of each other, not merely incidental to each other.  The threat was not the method used to commit a different crime against wife. (Cf. *People v. Louie* (2012) 203 Cal.App.4th 388, 399 [single act of threatening the victim was the method employed to attain the objective of dissuading a witness; therefore, defendant could not be punished for both criminal threats and dissuading a witness based on a single act].)  Nor did the threat facilitate the infliction of physical injury.

Lastly, one "purpose of section 654 is to ensure that a defendant's punishment will be commensurate with his culpability."  (*People v. Correa* (2012) 54 Cal.4th 331, 341.)

14

Prohibiting multiple punishment under the circumstances presented here would not further that purpose. Defendant attacked wife emotionally and psychologically over many hours by threatening her life while he was attacking her physically. Thus, imposing and executing the consecutive sentence for making criminal threats is consistent with the purpose of section 654.

C.    *Restraining order*

As the People partially concede, the same cannot be said of violating the domestic violence restraining order.**9** The acts which violated the restraining order are the same acts that underlie the domestic violence and criminal threats convictions. As to the restraining order, the evidence does not support an inference that defendant harbored any intent separate from his intents to physically and emotionally harm wife. Violating the restraining order was an incidental consequence of the other crimes. Based on the record here, there is not substantial evidence to support an implied finding that defendant harbored multiple criminal objectives, which were independent of and not merely

---

**9**    The People concede that if the acts underlying defendant's convictions for "criminal threats and corporal injury to a spouse . . . were the only evidence of his disobeying the [restraining] order, then section 654 would bar" punishment. The People go on to argue, however, that the sentence is not prohibited based on wife's testimony that defendant's jailhouse calls violated the restraining order. Contrary to the People's claim, the evidence about these calls is insufficient to support imposing sentence under section 654. The information charged the violation occurred on or about July 8, 2020. There was no evidence of when the calls took place. The restraining order allowed peaceful contact. There was no evidence defendant's conduct during the phone calls was not peaceful. Wife testified defendant tried to get her to change her statements regarding what had happened, and testified she felt threatened by calls she received from an unknown person. She did not testify that defendant threatened her. The prosecutor did not argue defendant's jailhouse calls were the basis for the charge, rather they argued his conduct in assaulting and threatening her was the basis for the charge. Defense counsel argued defendant did not violate the order because wife was the aggressor and he did not have the ability to control her and make her "be peaceful with him."

incidental to each other, to justify a concurrent term for violating the domestic violence restraining order. The sentence on count 3 should have been stayed under section 654.

## III

### *Senate Bill No. 136 (2019-2020 Reg. Sess.)*

In October 2019, the Governor signed Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136), which amended section 667.5, effective January 1, 2020 (Stats. 2019, ch. 590, § 1). Senate Bill 136 narrowed eligibility for the one-year prior prison term enhancement to those who have served a prior prison sentence for a sexually violent offense, as defined in Welfare and Institutions Code section 6600, subdivision (b). (§ 667.5, subd. (b).) The amendment applies "retroactively to all defendants whose judgments are not yet final as of that date." (*People v. Petri* (2020) 45 Cal.App.5th 82, 94.)

As the People concede, defendant is entitled to have the four one-year prior prison term enhancements (including the one that was stayed) stricken. Defendant's case was not yet final on Senate Bill 136's effective date. In addition, his prior prison term enhancements were not based on prior terms for sexually violent offenses.

Because the trial court imposed the maximum term, we need not remand the matter for resentencing. (*People v. Francis* (2017) 16 Cal.App.5th 876, 887 [remand unnecessary where court could not alter sentence to compensate for the loss of enhancements].)

## DISPOSITION

The judgment is modified to stay the one-year concurrent sentence on count 3, the violating a domestic violence restraining order offense, pursuant to section 654. The trial court also is directed to strike defendant's four prior prison term enhancements. As modified, the judgment is affirmed. The trial court shall prepare an amended abstract of

16

judgment reflecting defendant's new sentence and forward a certified copy to the Department of Corrections and Rehabilitation.


                                                              _____KRAUSE_____, J.


We concur:


_____DUARTE_____, Acting P. J.


_____HOCH_____, J.