Filed 5/15/26  P. v. Medina CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARTIN MEDINA<br><br>    Defendant and Appellant. | A171309<br><br>(San Mateo County Super.<br>Ct. No. 22-SF-008251) |

A jury convicted Martin Medina of attempted murder (Pen. Code,[1] §§ 664, 187, subd. (a)), criminal threats (§ 422, subd. (a)), discharging a firearm at an inhabited dwelling (§ 246), and first degree burglary (§ 460, subd. (a)).  As to the attempted murder conviction, the jury found that Medina personally used a firearm (§ 12022.53, subd. (b)) and personally and intentionally discharged a firearm (§ 12022.53, subd. (c)).  As to the criminal threats and first degree burglary convictions, the jury found that Medina was armed with a firearm during their commissions (§ 12022, subd. (a)(1)).

On appeal, Medina argues the trial court erred by imposing the sentencing enhancement under section 12022, subdivision (a)(1) related to his criminal threats conviction.  Finding no error, we affirm.

---

[1] All undesignated statutory references are to the Penal Code.

1

## BACKGROUND

Medina and the victim Juan Flores-Lopez (Lopez) worked at and lived on a commercial mushroom farm in Half Moon Bay, California. They met each other when Lopez began working on the farm in 2015. On July 1, 2022, both men attended a barbeque on the farm. Both men drank alcohol at the barbeque. Lopez thought Medina appeared upset and angry and heard Medina raise his voice while using bad words toward another attendee named Byron. Lopez suggested to Medina that he go home. Medina agreed and the three men walked toward Medina's residence. Before they reached Medina's residence, Medina said that he was going to kill Lopez and his whole family and then ran to his home where he retrieved a gun. The threat made Lopez feel afraid and concerned for his family. Lopez went to his residence where his wife, Miriam Ortiz, and multiple other family members were home. Once inside, Lopez locked the front door.

Within a minute, Medina approached Lopez's front door. As he approached, Medina told Lopez to come outside and that he had something to settle with him. According to Lopez, Medina twice yelled that he was going to kill Lopez and his family. Ortiz testified that she heard Medina say, "I'm going to kill you now," about four times. After hearing these threats, Lopez stood near the inside of his front door and used his cell phone to record what happened next.

When Medina reached the front door, he tried the doorknob in an unsuccessful effort to force open the front door. Lopez felt afraid. Medina then broke a glass panel on the front door. He next produced the firearm and aimed through the broken glass panel at Lopez's face. Medina fired the gun as Lopez ducked to the floor. The bullet traveled through Lopez' residence

2

and into a neighbor's residence where it lodged in a wall. No one was injured. Medina fled and hid the gun in a nearby dump truck.

Medina was detained shortly after the incident. Lopez identified Medina as the perpetrator in a field identification. The firearm was recovered from its hiding place.

By information, the San Mateo County District Attorney charged Medina with attempted murder and a special allegation of deliberation and premeditation (§§ 664, 187, subd. (a), 189; Count 1), criminal threats against Ortiz (§ 422, subd. (a); Count 2), criminal threats against Lopez (§ 422, subd. (a); Count 3), discharging a firearm at an inhabited dwelling (§ 246; Count 4), and first-degree burglary (§ 460, subd. (a); Count 5). With respect to Count 1, the information alleged the personal use of a firearm (§ 12022.53, subd. (b)) and the personal and intentional discharge of a firearm (§ 12022.53, subd. (c)). With respect to Counts 2, 3, and 5, the information alleged Madina was armed with a firearm (§ 12022, subd. (a)(1)).

Jury trial took place in July 2024. The jury found Medina guilty of attempted murder as alleged in Count 1, but it found that the special allegation that the offense was willful, deliberate and premeditated was not true. The jury found true both use enhancements related to Count 1. The jury also found Medina guilty of criminal threats against Lopez as alleged in Count 3, discharging a firearm at an inhabited dwelling as alleged in Count 4, and first-degree burglary as alleged in Count 5. The jury found true the arming enhancements related to Count 3 and 5. The jury found Medina not guilty of criminal threats against Ortiz as alleged in Count 2.

The trial court sentenced Medina to 18 years in state prison. Specifically, the court imposed 17 years on Count 1, which was comprised of the midterm of 7 years for the attempted murder conviction plus 10 years for

the personal use of a firearm enhancement. The court struck the punishment for the 20-year personal and intentional discharge of a firearm enhancement, finding it was not in the interest of justice. On Count 3, the court imposed a consecutive one-year sentence, which was comprised of one-third the midterm for the criminal threats conviction and one-third of the arming enhancement.

The trial court explained how the factors enumerated in Rule 4.425 guided its decision to impose consecutive sentences for Counts 3 and 5. It stated that, under the rule, "[o]ne of [the factors] is, are the crimes and their objectives predominantly independent of each other; are they separate acts of violence and/or separate threats of violence; were they committed at separate times rather than so closely in time." The court noted that "[s]ome of those factors, quite frankly, go both ways." But it concluded that the conduct underlying Count 1 constituted a separate act of violence from Count 3 because the latter was "made earlier at the barbeque, . . . but even if it [wasn't] at the barbeque, it was made prior to the incident at the door, prior to the decision to break in, and prior to the shooting." The court provided two reasons for its conclusion: "One, [Lopez] went to his house, pulled out his phone, began to record it because of how worried he was from the threat at the barbeque. [¶] To the Court, it defies logic for him to be standing there in plain view with his phone out if he thought he was going to be shot. So there is clearly empirical evidence of the distinct act separate in time from the threat. [¶] The second reason, and we talked about this earlier, but it factored in here and I want to bring it up. . . . [¶] Despite the jury finding the premeditation allegation not true, there clearly was some portion of time between the threat and the shooting."

On Count 4 and 5, the trial court imposed but stayed midterm sentences pursuant to section 654. The prosecution conceded, and the court

4

agreed, that the attempted murder (count 1) and firing the gun in the residence (count 4) was a single act, and the court reasoned that the shooting and then Medina's sustained efforts to unlock the door shared the same intent—to kill Lopez—even though they were separate acts. Although the court analyzed whether to impose consecutive or concurrent sentences for Counts 3 and 5, it did not explicitly address the application of section 654 to Count 3.

## DISCUSSION

Medina raises a single issue. He claims the trial court erred in imposing the sentencing enhancement under section 12022, subdivision (a)(1) related to his criminal threats conviction. He postulates that because the court did not stay the punishment for making a criminal threat pursuant to section 654, it must have imposed punishment based on his initial threat made at the barbeque; and that because he was not armed with a gun when he made his initial threat at the barbeque, the court should not have imposed punishment for the arming enhancement. He argues that the enhancement "cannot be applied to his conduct before he retrieved his gun." Because substantial evidence supports imposition of sentence for the criminal threats conviction and the arming enhancement based on Medina's conduct *after* he retrieved the gun, we affirm.

### I.

### Governing Law and Standard of Review

Section 654, subdivision (a), provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." This section "precludes multiple punishment for a single act or omission, or an indivisible

course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) "The purpose of the protection against multiple punishment is to insure that the defendant's punishment will be commensurate with his criminal liability." (*Neal v. State* (1960) 55 Cal.2d 11, 20, disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 344.)

Few crimes are the result of a single physical act. (*Neal v. State, supra,* 55 Cal.2d at p. 19.) "It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] . . . [I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) On the other hand, if the defendant "harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*Ibid.*) In such a case, "the trial court may impose punishment for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct. [Citations.] The principal inquiry in each case is whether the defendant's criminal intent and objective were single or multiple." (*People v. Liu* (1996) 46 Cal.App.4th 1119, 1135.)

"Whether the defendant entertained multiple criminal objectives is a factual question for the trial court, and its findings on this question will be upheld on appeal if there is any substantial evidence to sustain them." (*People v. Nubla* (1999) 74 Cal.App.4th 719, 730.) We review the trial court's findings in the light most favorable to the People, and we presume in support

6

of the sentencing order the existence of every fact the trial court could reasonably deduce from the evidence. (*People v. Atencio* (2012) 208 Cal.App.4th 1239, 1243.) Where, as here, the trial court makes no express finding, an implied finding that the crimes were divisible inheres in the judgment and must be upheld if supported by the evidence. (*People v. Nelson* (1989) 211 Cal.App.3d 634, 638.) A defendant's failure to object to the consecutive sentence in the trial court does not forfeit the section 654 issue. (*People v. Le* (2006) 136 Cal.App.4th 925, 931.)

## II.

### The Evidence Supports a Finding that Medina Harbored Multiple Criminal Objectives After He Obtained the Gun

Medina claims to only challenge the consecutive four-month sentence for the gun enhancement related to Count 3 without challenging the trial court's section 654 analysis regarding the eight-month consecutive sentence for Count 3. Medina asserts that "[t]he trial court stated the choice to make count 3 consecutive was due to the fact that the initial threats occurred in the parking lot while the men were walking towards [Medina's] house and were thus, separated in time and distance from the shot [Medina] fired into the trailer home of the victim." Based on this view of the court's ruling, Medina argues that he was not armed when he made threats for which he was convicted, rending the enhancement inapplicable to those threats. Medina misapprehends the record.

The trial court's statements on which Medina's argument is premised concerned the facts relating to crimes that affect whether to impose a consecutive sentence pursuant to California Rules of Court, rule 4.425(a). The court found that "there [was] clearly empirical evidence of the distinct act [of the attempted murder] separate in time from the [criminal] threat," even though the jury found the attempted murder was not premeditated. It

7

explained that "even if [the criminal threat underlying Count 3] *wasn't*, even if it *weren't at the barbeque*, [the threat] was made prior to the incident at the door, prior to the decision to break in, and prior to the shooting." (Italics added.) The court explicitly determined that "even if" it disregarded the earlier threats made at the barbeque and only considered Medina's later threats made outside Lopez's home, the threats were independent of and separated in time from the attempted murder. Accordingly, it is evidence that the court viewed the later threats as the basis for Count 3.

Indeed, the People did not argue that the earlier threats Medina made at the barbeque violated section 422.[2] Instead, at closing arguments, the prosecutor focused solely on the threats Medina made outside Lopez's house. The prosecutor first observed that the reason Lopez began recording Medina was "because Mr. Flores Lopez heard Mr. Medina coming. He heard the threats, heard the yelling, heard the vulgar language before and that's why he got the phone out to start recording because he could hear him coming." When discussing the charges for criminal threats, the prosecutor did not

---

[2] To show a criminal threat pursuant to section 422, the prosecution must prove: " '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630; see also CALCRIM No. 1300.)

distinguish the alleged threats made against Ortiz underlying count 2 from the threats against Lopez underlying count 3. To prove the first element of each offense—i.e., that an unlawful threat was made—the prosecutor pointed to the recording, arguing Lopez began recording after he and Ortiz heard Medina make threats outside their home. As evidence in support of the third element—i.e., that the threat was facially so unequivocal as to convey an immediate prospect of execution of the threat—the prosecutor stated: "[Medina] had a gun. He [was] yelling that he is going to kill [Lopez]." The prosecutor continued: "[Medina] [was] saying, I am going to kill you right then. That's what that means. It means it is going to happen imminently so as communicate to [Ortiz] and Mr. Flores Lopez that the defendant had serious intent and immediate prospect of threat to be carried out." The prosecutor asserted the fourth element of each offense was established because "the threat actually caused Ms. Ortiz in Count 2 and Mr. Flores Lopez in Count 3 to be in sustained fear for their own safety or for their family." And the prosecutor rhetorically asked whether "their fear reasonable under the circumstances"—i.e., the fifth element of the offenses— before remarking, "[o]f course it was." In short, the prosecution's case in support of Count 3 was premised solely on the threats that Medina made when he was armed outside Lopez's house in the presence of Ortiz.

With this understanding of the factual basis of Count 3, the inquiry becomes whether the court violated section 654 when it imposed a consecutive sentence on the gun enhancement for Count 3. (See *People v. Wynn* (2010) 184 Cal.App.4th 1210, 1218–1221 [holding that section 654 can bar multiple punishment for a conduct enhancement and for a crime other than the crime underlying the conduct enhancement].) We think not.

9

We begin with the jury verdict. The jury was instructed that, to find Medina guilty of Count 1, it needed to find that Medina had the specific intent to kill Lopez. If it found Medina guilty of attempted murder, the jury was instructed that separately it needed to determine if the attempted murder was done willfully and with deliberation and premeditation. Regarding Count 3, the jury was instructed it needed to determine if Medina specifically intended to threaten Lopez. The jury was further instructed that a special allegation attached to Count 3, and if it found Medina guilty of the crime then it needed to decide whether the People had proven the allegation that Medina was armed with a firearm in the commission of the crime. As a "general rule," courts presume that juries can and will dutifully follow the instructions they are given. (*People v. Washington* (2017) 15 Cal.App.5th 19, 26.) Thus, although it found Medina guilty of attempted murder, by rejecting the special allegation of deliberation and premeditation, the jury found Medina did not make a calculated decision to kill. At the same time, the jury necessarily found that Medina willfully threatened Lopez and that he did so while armed with a firearm. Viewed holistically, the jury verdict establishes that Medina's willful intent to threaten Lopez, while armed, was *not* part of a calculated plan to murder Lopez.

With the verdict in mind, we examine whether substantial evidence supports the trial court's implied finding that the criminal threats Medina made while armed at Lopez's home and Medina's subsequent use of his gun to attempt to murder Lopez each had a separate intent.

Lopez testified that he heard Medina before he reached the top step of his porch and twice heard Medina say he was going to kill Lopez and his family as Medina was coming toward his front door. And Ortiz testified that she heard Medina say, "I'm going to kill you now," about four times. Lopez

10

was afraid, so he locked himself inside his residence.  Lopez heard Medina making threats as he approached the door, calling to Lopez to come outside to "settle something."  Then Lopez began to record the incident on his cellphone as Medina approached the front door.

The recording captured Medina's attempts to open the door to Lopez's home.  When that was unsuccessful, Medina broke the glass window on the front door and attempted to unlock and open the door.  Then Medina put his gun through the broken front door window, pointed it at Lopez's head, and fired.

Viewed in a light most favorable to the People, there is sufficient evidence in support of the trial court's implied finding that Medina merely intended to threaten or intimidate Lopez before he reached a distinct intent to kill.  Because substantial evidence proves that separate acts with distinct intentions gave rise to the substantive offenses of criminal threats and attempted murder, nothing in section 654 requires the staying of the gun enhancement attached to the criminal threats offense.  Put differently, imposing the gun enhancement does not violate section 654's prohibition on multiple punishment for a single criminal act because the enhancement was attached to an offense based on distinct actions and intent from the attempted murder offense in which Medina used the gun.

Medina's argument that "[w]hatever threats he uttered when he shot at Mr. Flores Lopez were clearly in conjunction with the attempted murder" is conclusory and unavailing.  And his cited authorities *People v. Bradford* (1976) 17 Cal.3d 8 and *People v. Venegas* (1970) 10 Cal.App.3d 814 (*Venegas*) are distinguishable.  In *Bradford*, after being stopped for speeding, the defendant wrestled away the officer's revolver and used it to shoot at the officer.  (*Bradford*, at p. 13.)  The California Supreme Court found that

11

section 654 prohibited punishment for both assault with a deadly weapon upon a peace officer and possession of a firearm by an ex-felon under these circumstances because the defendant's possession of the officer's revolver was not antecedent and separate from the use of the revolver in assaulting the officer. (*Id*. at pp. 22–23.)

Similarly, in *Venegas, supra,* 10 Cal.App.3d 814, the defendant's convictions were based on the defendant's shooting someone in a bar. There was no evidence that the defendant had possessed the gun before the assault, and the defense presented evidence suggesting that the defendant had obtained the gun during a struggle at the bar moments before the shooting. (*Id*. at pp. 818–819, 821.) Under these circumstances, the court held that section 654 barred punishment for possession of a firearm by an ex-felon and punishment for assault with a deadly weapon because the evidence showed "a possession only at the time defendant shot [the victim]. Not only was the possession physically simultaneous, but the possession was incidental to only one objective, namely to shoot [the victim]." (*Id*. at p. 821.)

Here, by contrast, Medina armed himself before walking to Lopez's home and before he threatened Lopez as he approached his home. Unlike the *Bradford* defendant and contrary to disputed evidence in *Venegas*, Medina did not obtain the gun by wrestling it from his victim immediately before firing it. Medina's possession of the firearm was antecedent and separate from, not physically simultaneous with, his use of the firearm to attempt to murder Lopez.

We emphasize that our holding is limited to the circumstances of this case. It is plausible that a substantially similar fact pattern could support a finding that a defendant held the same objective when using a gun in the commission of criminal threats and when subsequently attempting murder

12

with the gun.  But considering how the altercation escalated from threats to attempting to break into Lopez's house, the fact that Medina did not commit the attempted murder with premeditation, and presuming the existence of every fact the trial court could reasonably deduce from the evidence in support of its finding, we conclude substantial evidence supports the trial court's determination that Medina harbored multiple criminal objectives.

## DISPOSITION

The judgment is affirmed.

_____
                            Sweet, J.*

WE CONCUR:


_____
Streeter, Acting P. J.


_____
Goldman, J.

---

* Judge of the Superior Court of California, County of Marin, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14